CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

JUL 16 2012

JULIA C. DUDLEY, CLERK
BY:
DEPUTY CLERK

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## ROANOKE DIVISION

| | | |
|---|---|---|
| **RICKIE NEAL PHILLIPS,** | ) | Civil Action No. 7:11cv00440 |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **MEMORANDUM OPINION** |
| | ) | |
| **STELLARONE BANK &** | ) | |
| **STELLARONE CORPORATION,** | ) | |
| | ) | **By: Samuel G. Wilson** |
| **Defendants.** | ) | **United States District Judge** |

This is an action pursuant to the Age Discrimination in Employment Act, 29 U.S.C. §

621 *et seq.*, and the Family and Medical Leave Act, 29 U.S.C. § 2601 *et seq.*, by plaintiff Rickie

Neal Phillips against defendants StellarOne Bank and StellarOne Corporation (collectively,

"StellarOne") for damages and equitable relief to redress Phillips' allegedly unlawful termination

from StellarOne's employ.  Phillips worked for years in the facilities department at First National

Bank until First National merged with another bank in 2008 to form StellarOne.  StellarOne

retained Phillips during the merger, increased his responsibilities in the facilities department, and

gave him a sizable raise.  Thereafter, he received a series of negative performance evaluations,

which eventually culminated in his termination in April of 2011.  Phillips claims here that

StellarOne terminated him not for poor job performance, but because of his age and his decision

to take FMLA leave.  StellarOne has filed a motion for summary judgment in which it argues,

essentially, that StellarOne terminated Phillips only after repeated, documented performance

deficiencies, and that Phillips has no evidence of discrimination under either the ADEA or

FMLA.  Viewing this dispute through a McDonnell Douglas[1] lens, the court discerns triable

---

[1] McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).

issues of fact accompanying both of Phillips' claims.  Accordingly, the court will deny

StellarOne's motion for summary judgment.

## I.

First National Bank hired Phillips as a facilities manager in June of 1996 and, as part of

his duties, tasked Phillips with responding to after-hours maintenance emergencies.  In 2002,

Phillips received late-night word that heavy rain was leaking into First National's Christiansburg,

Virginia branch.  After arriving on the scene, Phillips went behind the building to remove debris

from a clogged runoff drain.  As he stooped to clear the drain, an assailant stepped from the

darkness and struck Phillips in the face with a metal rod, concussing him and breaking his nose.

The incident sent Phillips to the emergency room, then to surgery one week later, and then to

various neurological evaluations for his suddenly frequent migraines.  Despite his injuries,

Phillips soon returned to his post at First National.  There he stayed until First National ceased to

exist, when it merged with Virginia Financial Group to form StellarOne Corporation in May of

2008.

The merger brought changes, including employee redundancies and departmental

consolidations.[2]  Phillips' position, however, was not one of those eliminated, and StellarOne

retained the fifty-year-old as its facilities manager.  StellarOne raised Phillips' pay by

approximately $5500, gave him a $500 bonus and an additional day of paid vacation, and

increased the number of branches for which he was responsible from thirty-six to fifty-nine.

Under StellarOne's new organizational structure, Phillips had two supervisees (Matt Linkous and

Corinthians Tomes, who were both younger than Phillips and had worked with him for some

---

[2] As of July 7, 2008, just after the merger, StellarOne had 883 employees, 56.9% of whom were over forty.
By December of 2011, after StellarOne terminated Phillips, the company had 736 employees, 59.2% of whom were
over forty.

time at First National) and one direct supervisor (Larry Patton, who was five years older than

Phillips and had been the facilities director for Virginia Financial Group). Litz Van Dyke, a

former high-ranking executive at First National, filled the role of StellarOne's Chief Operating

Officer, and Bill Heath, the former chief executive officer at First National, sat as chairman of

the board.[3]

Patton and Phillips began their working relationship on good terms. In Phillips' 2008

performance review, Patton used words like "outstanding," "tremendous knowledge," and "[g]et

it done attitude" to describe Phillips. (Mot. Summ. J. Ex. 2, 22, ECF No. 24-4.) Patton closed

the written review by giving Phillips 4.5 of 5 possible points and establishing several

performance expectations. Within a year, however, Patton's assessment of Phillips had

fundamentally changed. On Phillips' 2009 evaluation, Patton noted that Phillips was not

meeting his previously established expectations. For instance, Phillips had not visited all of

StellarOne's east-region locations, and he was having difficulty providing monthly updates on

work orders. Despite the overall negative review, Patton expressed his belief that Phillips was

making "many positive contributions to StellarOne," and that he "[took] care of many issues that

[Patton did] not see." (Mot. Summ. J. Ex. 2, 28, ECF No. 24-4.) Once again, the review set out

performance goals—this time, ten of them.

Around this time, Patton suggested that Phillips apply for FMLA leave because of

Phillips' frequent migraines. Phillips took that suggestion and, in early August of 2010,

delivered a completed FMLA certification to Carol Dudding, StellarOne's Human Resources

Project Manager. StellarOne quickly approved Phillips' leave request. In the meantime, Patton

---

[3] During the merger process, Phillips heard Heath mention that he wanted to put "a younger face" on StellarOne. (Mot. Summ. J. Ex. 2, 82, ECF No. 24-3.) Christine Lewis, a former StellarOne executive, heard a similar comment: "Bill Heath stated that we needed to find somebody younger and more attractive for the front desk position of what is now the Christiansburg Operations Center." (Mot. Summ. J. Ex. 11, 2, ECF No. 24-13.) Heath retired from StellarOne in February of 2010.

began meeting with Phillips regularly to discuss Phillips' new performance goals.  According to

Patton's written evaluations from those meetings, Phillips' performance continued to be below

expectations.

Eventually, Patton went to human resources and conferred with Dudding regarding

Phillips' job performance.  The pair decided to present Phillips with a "Written Warning and

Corrective Action Notice."  Before doing so, Dudding and Patton sent the proposed document to

Lisa Cannell, the head of StellarOne's human resources department:

> Lisa – This is the word document that [Patton] will be presenting to [Phillips]
> attached to a Written Warning form.  Thank you for taking time to review.  Please
> let Larry know if its [sic] okay to proceed since I will be out of the office
> tomorrow in Salem.
>
> Thanks!
>
> Carol J. Dudding

(Resp. Mot. Summ. J. Ex. D, ECF No. 25-4.)  Cannell responded on November 16th, 2010, with

an e-mail to Dudding and Patton:

> Larry,
>
> I have reviewed the documentation that you have provided with [Dudding's]
> assistance.  There is a lot of substance here and I am fine with you proceeding.
> *There is a lot of room for him to "trip up" after this warning considering all the*
> *areas where he is below expectation and the magnitude of improvements needed.*
> I recommend that you consider how strict you are going to be on this (i.e., zero
> tolerance the next time he does not provide a timely report) and communicate
> accordingly so that he knows this is a true warning—and that his job is truly on
> the line.  Also, make sure he knows there is not a probation period and these
> action plan expectations are indefinite [sic] until you change them otherwise.
>
> Thanks,
>
> Lisa.

(Id.) (emphasis added).  With Cannell having approved the document, Patton and Dudding held a

November 18th meeting with Phillips to discuss the warning notice and explain that if Phillips'

performance did not improve, the company would impose further disciplinary measures, up to and including termination.

In the months after the meeting, and as Phillips' 2010 performance review approached, Phillips' supervisors and the human resources department conferred:

> Hi Litz,
>
> After reflecting on your goals for the [performance review] meeting with [Phillips] on March 25, we think it may be best that you and [Patton] conduct this without HR. You will be going over his review, which is usually done without HR present, and then asking him some questions about his perspective on the review. You will also ask him to think about it over the weekend. We know that he may come back saying he can and wants to do it and asking for one more chance and any related support to correct issues, or he may resign, or he may come back defiant or sure that he is doing what is expected already. After you hear from him and see where he is, then HR can and will assist with the appropriate next step. What are your thoughts on this approach?
>
> *Also, Larry was to have provided the performance review to HR so that we can scrub it to ensure it is appropriate since this will be highly sensitive and this document could end up being used in a file defending our actions.* He has not yet provided it to us and we need some lead-time before March 25. Please let me know if you and Larry need more time or have any questions on this.
>
> Thanks!
>
> Lisa

(Resp. Mot. Summ. J. Ex. E, ECF No. 25-5) (emphasis added).

Van Dyke and Patton soon met with Phillips for his 2010 performance review, which included many of the same criticisms of Phillips' performance. After the review, Patton decided that StellarOne should terminate Phillips for poor performance, and he made a recommendation along those lines. With Van Dyke, Cannell, Dudding, and human-resources manager Nancy Mitchell concurring in Patton's recommendation, Van Dyke and Patton set an April 1, 2011 termination meeting with Phillips. At the meeting, Van Dyke told Phillips that he was a good employee with a good work ethic, but that he "did not fit the criteria for the new StellarOne."

(Resp. Mot. Summ. J. Ex. N., ECF No. 25-14.)  Phillips left his workplace, filed a charge with the Equal Employment Opportunity Commission, obtained a right-to-sue letter, and filed this lawsuit.

## II.

StellarOne argues that Phillips has not established a prima facie case of age discrimination and that, even if Phillips has established a prima facie case, it has proffered a legitimate, nondiscriminatory reason for terminating Phillips that he has wholly failed to expose as pretext for age discrimination.  Viewing this dispute through the McDonnell Douglas lens, the court finds that triable issues of fact preclude the court from resolving the controversy at the summary judgment stage, and, accordingly, the court will deny StellarOne's motion.[4]

The ADEA prohibits an employer from "discharg[ing] any individual . . . because of such individual's age." 29 U.S.C. § 623(a)(1).  A plaintiff can avert summary judgment on an ADEA claim in one of two ways.  First, a plaintiff may offer evidence of age discrimination under "ordinary principles of proof." Burns v. AAF-McQuay, Inc., 96 F.3d 728, 731 (4th Cir. 1996). The plaintiff so proceeding must produce evidence that clearly indicates a discriminatory animus at the workplace, and a nexus between that animus and the employee's discharge.  See Warch v. Ohio Casualty Ins. Co., 435 F.3d 510, 520–21 (4th Cir. 2006).

A plaintiff lacking such proof may proceed under the burden-shifting proof scheme explained in McDonnell Douglas Corp. v. Green.  Moody v. Arc of Howard Cty., Inc., No. 11-

---

[4] Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2).  The party moving for summary judgment bears the burden of informing the court of the basis for its motion and identifying those parts of the record that demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  In reviewing a summary judgment motion under Rule 56, the court "must draw all justifiable inferences in favor of the nonmoving party." United States v. Carolina Transformer Co., 978 F.2d 832, 835 (4th Cir. 1992) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)).

6

1720, 2012 WL 1184053, *2 (4th Cir. April 10, 2012).[5]  Under this proof scheme, the plaintiff

must first establish a prima facie case of discrimination by showing that he was (1) forty years of

age or older when (2) his employer terminated him, that (3) he was performing his job duties at a

level that met his employer's legitimate expectations, and that (4) his former position remained

open or was filled by a younger person.  Hill v. Lockheed Martin Logistics Management, Inc.,

354 F.3d 277, 285 (4th Cir. 2004) (en banc).  If the plaintiff establishes a prima facie case of age

discrimination, the burden shifts to the employer to proffer a nondiscriminatory reason for

terminating the plaintiff.  Id.  And if the employer does so, the burden returns to the employee to

prove that the employer's stated reasons were not its true reasons, but a pretext for age

discrimination.  Id. at 285.

At the summary judgment stage, the defendant is free to attack the plaintiff's prima facie

case by, for instance, asserting that the plaintiff was not meeting the employer's legitimate

expectations.  Warch, 435 F.3d at 517.  However, "nothing prohibits the employee from

countering this assertion with evidence that demonstrates (or at least creates a question of fact)

that the . . . 'expectation' is not, in fact, legitimate at all."  Id.  And, if the plaintiff ultimately

succeeds in establishing a prima facie case, "the fact-finder's rejection of the legitimate,

nondiscriminatory reason proffered by the defendant, coupled with the elements of the prima

facie case, may permit the fact-finder to infer the ultimate fact of invidious discrimination with

no additional proof of discrimination."  Jiminez v. Mary Wash. Coll., 57 F.3d 369, 378 (4th Cir.

---

[5] In Gross v. FBL Financial Services, 129 S. Ct. 2343 (2009), which held that the ADEA does not authorize mixed-motive discrimination claims and that plaintiffs must prove by a preponderance of the evidence that age was the "but for" cause of the challenged employer decision, Justice Thomas (the opinion's author) pointed out that the Supreme Court has not definitively decided whether the McDonnell Douglas framework applies in the ADEA context. Since Gross, however, courts outside this circuit have held that the McDonnell Douglas framework is still appropriate. See, e.g., Yeshick v. Mineta, 675 F.3d 622, 632 (6th Cir. 2012). The Fourth Circuit has not so held, but in fact routinely applied McDonnell Douglas to ADEA claims before Gross, see, e.g., Laber v. Harvey, 438 F.3d 404, 430 (4th Cir. 2006), and has since applied McDonnell Douglas to ADEA claims in unpublished decisions, see, e.g., Moody, 2012 WL 1184053 at *2.

1995); see also Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 147–48 (2000) (explaining the same).

With those standards in mind, the court turns to the facts of this case and finds that triable questions of fact underlie Phillips' prima facie case and StellarOne's proffered nondiscriminatory reason for its actions. StellarOne has sought to undermine Phillips' prima facie case by marshalling evidence of Phillips' failure to meet StellarOne's legitimate job expectations. Phillips, however, has countered by arguing that StellarOne saddled him with impossible, illegitimate expectations that no employee could meet. In support of his argument, Phillips spotlights two e-mails from StellarOne's head of human resources. One e-mail refers to performance expectations that could "trip up" Phillips,[6] and the other mentions Phillips' latest performance review document and the need to "scrub it to ensure it is appropriate." Clearly, both e-mails are subject to more than one interpretation. These e-mails, standing alone, are sufficient to raise a triable question of fact regarding the legitimacy of StellarOne's expectations and, by extension, Phillips' prima facie case.[7] *The very same evidence* calls into question StellarOne's nondiscriminatory explanation for Phillips' termination. The fact-finder is free to use the evidence as a basis for rejecting StellarOne's proffered explanation, and may then couple that rejection with the elements of the prima facie case to infer the ultimate fact of age

---

[6] Just before showing Cannell the "trip up" e-mail during her deposition, Phillips' counsel asked Cannell to define the term "trip up." Her response: "I would assume it means setting goals so that somebody can't meet them." (Resp. Mot. Summ. J. 24, ECF No. 25.)

[7] The parties also disagree on whether StellarOne replaced Phillips with someone younger. StellarOne claims that Patton, who is older than Phillips, has been performing Phillips' job responsibilities. And Phillips claims that Linkous and Tomes, who are younger than Phillips, are performing Phillips' job responsibilities. (StellarOne may have given Phillips this idea: "[T]here have been certain occasions where Matt Linkous and/or Corinthians "Junior" Tomes were more involved in a project than they otherwise would have been if Plaintiff were still employed." (Defs.' Ans. to Pl.'s Interrog. 2, ECF No. 25-3.)) Notwithstanding the obvious question of fact on this point, the law states that Phillips can establish this prong of his prima facie case merely by showing that his former position has "remained open." See Hill, 354 F.3d at 285.

8

discrimination. See <u>Jiminez</u>, 57 F.3d at 378.  The court will therefore deny StellarOne's motion for summary judgment on Phillips' ADEA claim.

**III.**

In its motion for summary judgment on Phillips's FMLA claim, StellarOne recapitulates its ADEA arguments: Phillips has failed to establish a prima facie case or to pretextualize StellarOne's proffered reason for terminating Phillips.  Here too, however, triable issues of fact preclude summary judgment.

The FMLA protects employees from discrimination for exercising their rights under the FMLA.  <u>See</u> 29 U.S.C. § 2615(a)(2); <u>Yashenko v. Harrah's N.C. Casino Co., LLC</u>, 446 F.3d 541, 546 (4th Cir. 2006).  In order to establish a prima facie case of FMLA discrimination, the employee must show that that he engaged in protected activity (e.g., took FMLA leave), that the employer took adverse action against him, and that the adverse action was causally connected to the plaintiff's protected activity.  <u>Id.</u> at 551.  If the plaintiff offers sufficient evidence to establish a prima facie case of FMLA discrimination, and if the defendant then offers a nondiscriminatory explanation for its actions, the plaintiff again bears the burden of establishing that the employer's explanation is a pretext for FMLA discrimination.  <u>Id.</u>

In this case, there is no dispute regarding the first two elements of Phillips' prima facie case.  In support of the third element, causation, Phillips once again offers Cannell's November 2010 "trip up" e-mail, and he highlights the fact that Cannell wrote the e-mail only three months after Phillips first used FMLA leave.  This evidence is sufficient to raise a triable issue regarding causation (and, therefore, Phillips' prima facie FMLA case).  And, once again, the very same evidence raises questions regarding StellarOne's nondiscriminatory explanation for Phillips'

9

termination.  The court will therefore deny StellarOne's motion for summary judgment on Phillips' FMLA claim.

### IV.

For the reasons stated, the court will deny StellarOne's motion for summary judgment in its entirety.

**ENTER**: July 16, 2012.

UNITED STATES DISTRICT JUDGE